## HOLMES v. HOLLAND FURNACE CO.
### No. 4434.

Circuit Court of Appeals, Fourth Circuit.

April 24, 1939.

Howard E. Manning, of Raleigh, N. C., and W. A. Dees, of Goldsboro, N. C. (Kenneth C. Royall, of Raleigh, N. C., on the brief), for appellant

Robert Ruark, of Raleigh, N. C. (Samuel W. Ruark and Ruark & Ruark, all of Raleigh, N. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

This action was originally instituted in the superior court of Wayne County, state of North Carolina, and removed by the defendant to the District Court of the United States for the Eastern District of North Carolina. The object of the action was to recover damages of $5,000 from the defendant for the alleged negligent installation of a furnace in plaintiff's house. At the close of all testimony, the trial court, upon motion of defendant, dismissed plaintiff's claim, and entered judgment for defendant against plaintiff upon defendant's counterclaim for $560, the amount alleged to be due defendant upon the purchase price of the furnace, with interest and costs. The principal question involved upon this appeal is whether the trial court was justified under the evidence in taking the case from the jury and entering such a judgment.

By agreement in writing dated November 6, 1935, plaintiff purchased from defendant and the defendant agreed to install one of its heating systems in plaintiff's residence in a thorough and workmanlike manner. Plaintiff claims the installation was faulty in the following particulars: (1) that sections of the furnace were not properly joined together causing smoke and gas to leak into the house; (2) that pipes were not installed to conduct the heat to the rooms; and (3) that defendant removed a layer of brick from the main support of the house, causing the whole house to sag in the middle.

The case made for plaintiff was in substance and effect as follows: The house in question was a two-story, seven-room frame dwelling, occupied by plaintiff and her family. Just prior to the installation, the walls were all papered, woodwork painted, furniture cleaned, and new curtains and shades supplied. Within one week after the installation of the furnace by defendant, the new curtains were black with soot. Plaintiff laundered them, and in one week they were dirty again. Within two or three weeks after the walls and furniture were cleaned, soot accumulated

on them again. None of these conditions existed prior to the installation. In cold weather it was necessary to raise the windows and open the doors to get coal fumes out of the house. Plaintiff reported this condition to defendant's Raleigh, N. C., office in a week after the installation. They sent a man to her home but conditions did not improve, and she again made report in a week or two. Other reports were made to the Raleigh office, and finally she took the matter up direct with defendant's factory. She says that the conditions have not been improved but have become worse. J. W. Williams, an expert in heating and ventilating, stated that tests of the furnace with a sulphur candle made just prior to the trial, but almost three years after the installation, showed that the furnace leaked in practically every section, and that these leaks caused smoke and gases to escape into the house. Williams also testified that in two places he found no pipe to conduct the hot air from the furnace up to the registers, but instead, the air was permitted to come up through a space between the plastering and the studding of the house. Using a photograph to illustrate his testimony, he testified that in putting in a heat pipe, certain brick had been knocked out of the chimney; that the chimney constituted a pillar supporting the sills of the house, and when the brick were knocked out, the sills settled and the house sagged. This pipe, in his opinion, could have been put in without removing the brick. The house has settled about two inches, such that when a door is closed, the corner of the door goes up about an inch and a half above the casing. There are numerous cracks in the walls and the door frames are torn loose. The floors all sag toward the chimney. The bricks have been taken out at the exact place where one of the heat pipes was inserted. Plaintiff first noticed that the doors would not close and the walls were cracking in the spring following the installation of the furnace. She purchased the house in 1918. Prior to the installation of the furnace, none of the above described conditions existed. No one had worked under the house since the furnace was installed. E. F. Taylor, a contractor, testified that he examined the premises, and that the removal of the brick caused the house to sag.

Defendant's evidence is to the effect it removed no bricks from chimney, and, in any event, the removal of the bricks described would not cause the house to settle; that all joints were carefully cemented; and that pipes were installed to conduct heat from furnace to registers. Evidence was introduced to show that there were cracks in the walls before the furnace was purchased; and that the furnace was installed in a workmanlike manner and according to usual practices in the heating industry. Evidence was introduced to the effect that any excess dirt resulted from the use of a poor grade of coal, different from that recommended for this type of furnace.

It is not necessary to cite authorities to the effect that when one party moves for a judgment of nonsuit or for dismissal, the evidence must be considered in its aspect most favorable to the opposite party; that the weight of testimony is always for the jury to determine; and courts will take fact questions from the jury only where the necessity for such action is clear and imperative. On the other hand it is equally well settled that where the evidence is so clear and conclusive that reasonable men could draw but one inference therefrom, it is the duty of the trial judge to take the case away from the jury. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. U. S., 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Certain-teed Products Corp. v. Wallinger, 4 Cir., 89 F.2d 427. Or, putting it conversely, if upon the evidence, reasonable men might differ, the case is for the jury, not the court.

Applying these principles to the facts presented in this case, we are convinced that reasonably minded men might well differ as to the disputed questions. We are of the opinion that there is a substantial conflict in the evidence and that the case should have been submitted to the jury. In view of this conclusion, it is not necessary to consider the second point raised by plaintiff concerning the defendant's alleged waiver of right to move for nonsuit.

The judgment of the court below in dismissing plaintiff's claims and in entering judgment in favor of the defendant upon its counterclaim is accordingly reversed and the case remanded for further proceedings.

Reversed.